IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICKY JAMES | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-11-CV-0136-BD |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ricky James seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed.

I.

Plaintiff alleges that he is disabled as a result of obesity and chronic knee pain stemming from a gross anatomical deformity associated with Blount's disease.[1] After his applications for disability and supplemental security income ("SSI") benefits were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. That hearing was held on September 11, 2009. At the time of the hearing, plaintiff was 33 years old. He is a high school graduate with past work experience as a pizza delivery driver, a forklift operator for a printing company, a grocery store stocker, and an express-mail delivery driver. Plaintiff has not engaged in substantial gainful activity since May 1, 2008.

---

[1] Blount's disease, or *tibia vara*, is a growth disorder that causes extreme bowleggedness. *See* DORLAND'S MEDICAL DICTIONARY 1840 (29th ed. 2000). As a child, plaintiff had surgery in an attempt to alleviate symptoms linked to this condition, which involved the placement of pins in both knees to prevent them from growing in a bowed pattern. (*See* Tr. at 249).

The ALJ found that plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that plaintiff suffered from severe obesity and knee problems, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that plaintiff had the residual functional capacity to perform sedentary work with some non-exertional limitations, but could not return to his past relevant employment. Relying on the testimony of a vocational expert, the judge found that plaintiff was capable of working as an eyeglass frame polisher, a film touch-up inspector, and an addressing clerk -- jobs that exist in significant numbers in the national economy. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In two grounds for relief, plaintiff contends that: (1) the finding that he does not meet or equal Listing 1.02A, major dysfunction of a joint, is both legally deficient and not supported by substantial evidence; and (2) the Appeals Council did not properly consider new evidence from his treating physician.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *See Richardson*, 91 S.Ct. at 1427. The district court

may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant establishes prejudice. *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

In his second ground for relief, plaintiff argues that the Appeals Council did not properly consider new evidence from his treating physician, Dr. Charles S. Rutherford. (*See* Plf. MSJ Br. at 19-24). Dr. Rutherford, an orthopedic surgeon, examined plaintiff twice before the administrative hearing on September 11, 2009. (*See* Tr. at 266-273). At the first examination conducted on April 6, 2009, Dr. Rutherford noted that plaintiff walked with a limp, exhibited limited flexion and

"marked varus deformity" in his left knee, and had similar symptoms in his right knee, "but not quite as much tenderness medially." (*Id.* at 266). X-rays of plaintiff's knees showed "the typical deficiency of the medial tibial plateau and marked varus inclination of his femoral tibial angle and resultant varus deformity of his knees." (*Id.*). Dr. Rutherford diagnosed plaintiff with "[s]evere varus deformity, both knees with significant degenerative changes, all secondary to Blount's disease and morbid obesity." (*Id.*). While he believed that a total knee arthroscopy was premature, Dr. Rutherford recommended bilateral osteotomies, but observed that plaintiff, who weighed 386 pounds, would need to lose 150 pounds before the surgery could be performed. (*See id.*). At a second exam on June 5, 2009, Dr. Rutherford noted that plaintiff had not lost much weight and that his condition was "essentially unchanged[.]" (*Id.* at 273). Although it might be possible to perform an osteotomy on plaintiff's right knee, Dr. Rutherford observed that "[h]is left knee now is probably too far gone for that and he may need a total knee on the left." (*Id.*).

Notwithstanding this evidence, the ALJ found that the severity of plaintiff's obesity and knee problems did not meet or equal any impairment listed in the social security regulations. (*See id.* at 15). Specifically, the ALJ determined that:

> The claimant's impairments do not meet or equal Listing 1.02A, major dysfunction of a joint characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) with involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively.

(*Id.*). On January 8, 2010, more than one month after the ALJ issued his written decision, Dr. Rutherford provided the following opinion regarding plaintiff's knee condition:

> I feel that Mr. James does indeed have a major dysfunction of both knees due to gross anatomical deformity as well as chronic pain and stiffness. His x-rays confirm severe degenerative changes, joint space

> narrowing and varus deformity of both knees. It is my medical opinion that his morbid obesity is a significant contributing factor to the severity of his impairment. In fact, I have recommended as a medical necessity for bariatric surgery to treat his obesity prior to recommending any orthopedic surgery. It is my medical opinion that the patient is unable on a sustained basis to walk at a reasonable pace, to use public transportation that will require climbing in and off of a bus or a train or carrying out routine ambulatory activities. I think his permanent impairment precludes him from making 4-6 trips up and down steps while carrying an object weighing approximately 10 pounds. It is my medical opinion that Mr. James fulfills all the requirements for major dysfunction of a joint as described in the Social Security listing 1.02. I had not seen Mr. James until 04-06-09 but it is my medical opinion that his condition pre-existed that date by a number of years, probably since his childhood.

(*Id.* at 276). Plaintiff submitted this letter to the Appeals Council as part of his request for review. Although the Appeals Council referred to "additional evidence" in its decision, it did not specifically address the letter. (*Id.* at 1-5).[2]

1.

The Social Security Act, read in conjunction with the enabling regulations, requires the Appeals Council to consider new evidence presented for the first time in a request for review. *Rodriguez v. Barnhart*, 252 F.Supp.2d 329, 336 (N.D. Tex. 2003), *citing* 20 C.F.R. § 404.970(b); *see also Carry v. Heckler*, 750 F.2d 479, 486 (5th Cir. 1985) (all evidence, including new evidence, must be reviewed by Appeals Council in making its decision). New evidence justifies a remand only if it is material. *See Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003); *Moore v. Astrue*, No. 3-07-CV-2017-B, 2009 WL 5386134 at *3 (N.D.Tex. Nov.13, 2009), *rec. adopted*, 2010 WL 165992 (N.D. Tex. Jan. 13, 2010). Evidence is "material" if: (1) it relates to the time period for

---

[2] To the extent plaintiff argues that reversal is required because the Appeals Council failed to specifically address this new evidence, such an argument is unavailing. The Appeals Council is not required to provide a detailed analysis of, or otherwise explain the weight given to, new evidence. *See, e.g. Higginbotham v. Barnhart*, 405 F.3d 332, 335 n.1 (5th Cir. 2005); *Price v. Astrue*, No. 3-09-CV-1275-BD, 2011 WL 888260 at *3 (N.D. Tex. Mar. 11, 2011); *Henderson v. Astrue*, No. 3-10-CV-0589-D, 2011 WL 540286 at *4 (N.D.Tex. Feb.15, 2011).

which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed the outcome of the disability determination. *See Moore*, 2009 WL 5386134 at *3, *citing Castillo*, 325 F.3d at 551-52. If new evidence is presented while the case is pending review by the Appeals Council, a court will review the record as a whole, including the additional evidence, to determine whether the Commissioner's findings are still supported by substantial evidence. *Higginbotham v. Barnhart*, 163 Fed.Appx. 279, 281-82, 2006 WL 166284 at *2 (5th Cir. Jan.10, 2006); *see also Jones v. Astrue*, 228 Fed.Appx. 403, 406-07, 2007 WL 1017095 at *3 (5th Cir. Mar.29, 2007), *cert. denied*, 128 S.Ct. 707 (2007) (warning against remanding cases based on new evidence presented to the Appeals Council without meaningful regard for the substantial evidence standard).

2.

Here, plaintiff has established that the new evidence is material. In his letter, Dr. Rutherford indicated that plaintiff cannot walk at a reasonable pace on a sustained basis, use public transportation that will require climbing in and off of a bus or a train, or carry out routine ambulatory activities. (*See* Tr. at 276). This opinion suggests that plaintiff may be unable to ambulate effectively. The applicable regulation, 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b), provides, in pertinent part:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities[.]
>
> (2) To ambulate effectively, *individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.* They must have the ability

> to travel without companion assistance to and from a place of employment or school. Therefore, *examples of ineffective ambulation include*, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, *the inability to use standard public transportation, the inability to carry out routine ambulatory activities*, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* § 1.00(B)(2)(b) (emphasis added). Had the Commissioner properly considered Dr. Rutherford's letter, plaintiff argues that it would have found him disabled under Listing 1.02A, which requires a showing of:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

*Id.* § 1.02A.

There is little doubt that plaintiff satisfies the elements of the first paragraph of Listing 1.02A.[3] Indeed, the Commissioner acknowledges that an x-ray of plaintiff's left knee revealed a "sublaxation [*sic*] of the femoral condyles relative to the tibia." (*See* Def. MSJ Rep. Br. at 6, *citing* Tr. at 253). The x-ray also showed "[s]light tricompartment degenerative arthrosis" that included

---

[3] The court agrees with plaintiff that the ALJ did not adequately explain why the requirements of Listing 1.02A were not met. Rather, the ALJ merely recited the requirements of the listing and concluded that plaintiff did not meet or equal those requirements. (*See* Tr. at 15-16). *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ required to discuss evidence offered in support of claim for disability and explain why he found plaintiff not disabled at Step 3 of sequential evaluation process); *Hermosillo v. Astrue*, No. 1-10-CV-0198-BG, 2011 WL 4528206 at *4 (N.D. Tex. Sept. 12, 2011), *rec. adopted*, 2011 WL 4528374 (N.D. Tex. Sept. 30, 2011).

"*joint space narrowing*, articular irregularity, and slight subarticular sclerosis." (Tr. at 253) (emphasis added). Dr. Bonnie J. Lammers, a state agency physician who examined plaintiff in December 2008, noted that his left-knee flexion was 110 degrees out of a possible 150 degrees and that his right-knee flexion was 120 degrees out of a possible 150 degrees. (*See id.* at 249, 251, 254). She reported that plaintiff had a "decreased range of motion at both knees . . . more prominent in the left knee." (*Id.* at 251). In April 2009, Dr. Rutherford noted that plaintiff's left knee showed "0 to 105 degrees of flexion." (*Id.* at 266). That plaintiff experienced stiffness in the joint is documented by these range-of-motion findings. The objective medical evidence also indicates that plaintiff's left knee pain was chronic. Dr. Yvonne Post, a state agency medical consultant who conducted a residual functional capacity assessment in December 2008, found that plaintiff could walk or stand for only four hours out of an eight-hour work day due to "knee pain." (*See id.* at 17, 256-63). As of April 2009, plaintiff's knee pain was sufficiently severe to warrant a surgical recommendation from Dr. Rutherford. (*See id.* at 266).

Regarding the second paragraph of Listing 1.02A, the only medical source evidence reviewed by the ALJ that directly bears on whether plaintiff could ambulate effectively is the observation by Dr. Post that "[activities of daily living] are compelling for difficulty with ambulatory activities." (*Id.* at 263). Significantly, none of the evidence cited by the Commissioner as potentially relevant to this issue establishes that plaintiff *can* ambulate effectively using the criteria set forth in section 1.00(B)(2)(b). That plaintiff was not using a cane, crutch, or walker at the time of his examination by Dr. Lammers is not dispositive of this inquiry. *See Dobson v. Astrue*, 267 Fed. Appx. 610, 612, 2008 WL 467694 at *2 (9th Cir. Feb. 20, 2008). Nor is effective ambulation conclusively established merely because plaintiff had a normal gait and exhibited "[t]oe, heel and tandem walking" within normal limits upon examination by Dr. Lammers. (Tr. at 251). At most, this

evidence demonstrates a capacity akin to the ability to independently move about one's home without the use of assistive devices, which does *not* constitute effective ambulation. *See, e.g.* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2). Moreover, Dr. Lammers noted that plaintiff "does guard his left knee[,]" and acknowledged that the results of his physical examination were "entirely consistent with Blount's disease." *(See* Tr. at 251). While Dr. Lammers indicated that plaintiff's "[m]uscle strength is 5/5 throughout[,]" her findings reflect that the left calf measured two centimeters less than the right calf, suggesting atrophy in the left calf muscle. *(See id.* at 251). Other observations made by Dr. Lammers -- the absence of spasms in the cervical, thoracic, or lumbar paraspinous muscles, and of clubbing, cyanosis, and edema in the extremities -- are irrelevant to the question of whether plaintiff's knee deformity prevented effective ambulation. *(See id.* at 250-51).

The Commissioner also points to a Presbyterian Hospital report dated January 11, 2008, indicating that plaintiff exhibited a "[s]trong/[f]ull range of motion against gravity, full resistance" in his left lower extremity. *(See id.* at 238). Not only was this finding made months before plaintiff's alleged onset date by a registered nurse, whose opinion is owed no deference under the regulations, *see Hollins v. Astrue*, 780 F.Supp.2d 530, 535 (E.D. Ky. 2011), *citing* 20 C.F.R. § 404.1513, but it shows only that plaintiff was able to lift his left leg, which reveals very little about his ability to walk.

Although Dr. Rutherford's statement that plaintiff meets the requirements of Listing 1.02 is not entitled to any "special significance," *see Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003), *citing* 20 C.F.R. § 404.1527(e), his opinion regarding plaintiff's ability to ambulate effectively is a medical opinion presumptively entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). Further, Dr. Rutherford's opinion regarding plaintiff's ambulatory abilities is not merely conclusory. To the contrary, his observations about plaintiff's

ability to walk, climb, and carry out routine ambulatory activities were based on the results of two physical examinations, as well as his interpretation of x-rays confirming "[s]evere varus deformity, both knees with significant degenerative changes, all secondary to Blount's disease and morbid obesity." (*See* Tr. at 266, 273, 276).

In contrast to the record considered by the ALJ, which did not contain any evidence from a medical source regarding plaintiff's ability to ambulate effectively, the opinions expressed by Dr. Rutherford in his January 8, 2010 letter would, if accepted, establish that plaintiff is not able to ambulate effectively due to his knee condition and, as a result, meets or equals the requirements of Listing 1.02A. The new evidence is so inconsistent with the ALJ's findings that it undermines the resulting disability determination. Accordingly, this case must be remanded for proper consideration of the opinions contained in Dr. Rutherford's letter. *Ozonoh v. Astrue*, No. 3-11-CV-02287-BK, 2012 WL 555197 at *4 (N.D. Tex. Feb. 21, 2012) (remand required where new medical opinion evidence submitted to the Appeals Council was so inconsistent with the ALJ's findings that it undermines the ultimate disability determination); *Kelley v. Commissioner of Social Sec. Admin.*, No. 3-10-CV-2574-M, 2012 WL 527866 at *12-13 (N.D. Tex. Jan. 17, 2012), *rec. adopted*, 2012 WL 527864 (N.D. Tex. Feb.16, 2012) (same) (citing cases).

## CONCLUSION

The hearing decision is reversed, and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

SO ORDERED.

DATED: March 19, 2012.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE